No. 24.—William L. Wynn, plaintiff in error, *vs.* John W. Lee, Trustee, defendant.

[1.] When the Statute of Limitations has once begun to run against an action to recover personalty, its running is not stopped by the removal of the defendant without the State. As a general rule, when the Statute begins to run, it runs over every impediment.

[2.] By the laws of force in Georgia, there is no saving in favor of *non-resident* plaintiffs in personal actions, against the operation of the Statute of limitations; the saving in their favor in the 9th Section of the Act of 1767, being repealed by the 2d Section of the Act of December, 1806.

[3.] A title to personal property, acquired under the limitation laws of this State, is not only a good defence, but will sustain an action for the recovery of the property.

[4.] Where A holds possession of personal property in another State, until he acquires a title to it under the limitation acts of that State, and B purchases the property of him, and bringing it into this State, is sued for it, he may plead the Statute of Limitations of the foreign State, and his title acquired

through A under it, in bar of the action. *Provided*, the limitation act of that State not only bars remedies, but also *titles* or *claims*; and *provided, also*, the situation of the parties in that State is such as that the Statute of Limitations there may actually and fully operate upon the case.

[5.] In such a case, an exemplified copy of the Act of Limitation in that State, from the proper office, may be read in evidence under the general issue.

[6.] What constitutes the execution of a trust in personalty.

[7.] The English rule, that where a plaintiff demurs to a plea, the demurrer runs through the whole record, and it is the duty of the Court to look through the record, and give judgment against the party first in default, is not applicable to our Courts.

[8.] In the argument of a cause before the jury, the party entitled to the conclusion, shall state to opposing counsel the grounds in the pleadings upon which he expects to rely, and the points of law he intends to make to the Court, and shall read or present to him the authorities which he intends to use. And the counsel, in conclusion, shall be confined, in his argument, to the grounds, points, and authorities thus exhibited.

Trover, Muscogee Superior Court, tried before Judge ALEXANDER, May Term, 1848.

Such facts are stated in the opinion of the Court, as are necessary to a proper understanding of it.

COLQUITT & WELLBORN, and JOHNSON & WILLIAMS, for plaintiff in error.

HOLT, and JONES, BENNING & JONES, for defendant.

J. JOHNSON, for plaintiff in error, submitted—

That judgment should have been given on the demurrer for defendant, because the declaration is defective. *Stephens' Pleadings*, 143. *Gould's Plead.* 474. 1 *Kelly*, 10. 3 *Kelly*, 81. 2 *Kelly*, 258.

The plaintiff should begin and conclude. 3 *Blackstone*, 290. *Rules of Court*. 38 *English C. L. Reports*, 94.

The exemplification should have been admitted under the general issue. *Gould*, 44, 306. *Ibid.* 376. 2 *Saunders on Pl. & Ev.* 887.

The demurrer is not well taken. 3 *Kelly*, 265.

The Court erred in the charge given upon the Statute of Lim-

Wynn *vs.* Lee.

itations, and also in the refusal to charge. *Prince*, 557. *Ibid*, 579. *Ibid*, 904.

Argument of S. JONES, for defendant in error.

This action was brought by John W. Lee, trustee of Mrs. Mary Ann McMillan. By the terms of the deed, the property was conveyed to John W. Lee, trustee, and limited to the use of Mrs. McMillan, (a feme covert,) for life, and then to her children ; and it was also stipulated that Mrs. McMillan should have the possession of the negroes. Defendant relies upon a bill of sale made by McMillan, the husband, and the Statute of Limitations of Mississippi, and of the State of Georgia.

And he contends that by the terms of the deed of trust, Mrs. McMillan is entitled to the possession of the negro, and therefore ought to have been the plaintiff in the action.

1st. As to the right of the trustee to sue.

The legal estate and title is in the trustee, and he holds, not only as trustee for Mrs. McMillan, but after her death for her children.

The *cestui que trust*, though the absolute owner in Equity, in Law is considered in the light of a stranger, and the trustee can bring any action respecting the trust estate in a Court of Law. *Lewin on Trusts, page* 247.

The right of the *cestui que trust* to the possession is recognised only in a Court of *Equity* ; for in a Court of *Law*, the *cestui que trust* is merely tenant at will or at sufferance. *Ibid*, 481. *Willis on Trustees, p.* 72, 73, 77, 84–5, 109.

A *cestui que trust* cannot recover in ejectment, unless a surrender to him of the legal estate can be reasonably presumed, &c. &c. And the *cestui que trust* has no alternative but to bring his action in the name of the trustee, &c. *Ibid*, 482.

This question was virtually decided by this Court in the case of *Blake, trustee, vs. Irwin,* 3 *Kelly*, 345–6.

The clause in that deed, relative to the possession of Blake, the *cestui que trust*, is very much like, indeed very similar to the deed before the Court. It is stronger for the *cestui que trust* than the deed to Lee.

The Court was unanimous that the legal estate was in the trustees, and that Blake had only an equitable interest. *Ib.* 365.

It was decided in that case, that the entire use was given to Blake, but the *use only*, and not the *corpus*. That he was entitled to the *possession*, but that possession was evidently not an inherent right, by virtue of the estate which he held, but bestowed upon him as the agent, rather, of the trustees.

Again, the clause was inserted in both deeds, (giving the *cestui que trust* the possession of the property,) to relieve the Court of Chancery from the difficulty it might have felt in ordering the trustee to give the *cestui que trust* possession of the estate. That he had other uses or trusts to execute, for he was charged with interest, not only of Blake, in the one case, and Mrs. McMillan in the other, (Blake might have children—Mrs. McMillan had them when the deed was executed,) but the interest of the children. I say, relieve the Court from that difficulty, for it is well settled that Courts of Chancery frequently, yea almost always refuse to order the trustee to give possession to the *cestui que trust*, when there are remainder-men, or others interested in the uses he has to execute.

2d. Was the deed a good one under the laws of South Carolina, when it was executed? We say yes—*non constat* that there is any law of South Carolina, forbidding such a deed.

3d. That plaintiff's right was barred by the Statute of Mississippi.

Statutes of Limitation prescribe the action or remedy, and not the contract; or, in the language of the authority, "*prescriptio et executio non pertinent ad valorem constructus sed ad tempus et modum actionis instituendæ*." The case of *British Linen Co. vs. George Harley Drummond*, 21 *Com. L. Rep.* page 194. *Huber vs. Steiner*, 29 *Ibid, page* 304. 20 *Ibid*, 387. *Imlay vs. McEllefsen*, 2 *East*, 453. *Decouche and others, vs. Lavetier and others*, 3 *Johns. C. R.* 190. *Ruggles vs. Keeler*, 3 *Johns.* 261. Where the decisions are reviewed and the principles affirmed.

All prove that when the Statute applies to the remedy or action, the law of the former prevails. When it relates to the effect of the contract, the law of the place of the contract prevails.

The defendant, aware of the general rule, and that he can claim nothing under it, tries to set up a distinction in his favor. That the Statute of Limitations of Mississippi had run in favor of Lewis before Lewis sold to him in Mississippi, and he brought the negro to this State. To support this position, he relies on

*Story on Conflict of Laws, page* 487, *section* 582. *Newby vs. Blakely*, 3 *H. & M.* 57. *Brent vs. Chapman*, 5 *Cr.* 358. *Shelby vs. Grey*, 11 *Wh.* 362.

The distinction contended for by Mr. Story must be taken with the condition mentioned by him, and on which the decisions relied on by defendant were made, to wit:

Where the parties are resident within the jurisdiction, during the period prescribed by the Statute, so that it has operated actually and fully upon the case, and the Statute does not only extinguish the right of action, but the claim or title itself, *ipso facto*, and declare it a nullity after the prescribed period.

Again, it must be remembered that it is not said to be the law of Mr. Story, but only contended for by him. In other words, it is admitted by him that the weight of authority is against him, while he advances the opinion which has been read.

The Court, if inclined to favor the opinion of Mr. Justice Story, will not certainly enforce it, when the facts do not place the parties in the situation which he contemplates.

They were not in the same jurisdiction during the period after which the action is prescribed.

How much soever we may generally yield to the force of the reasoning of Judge Story on this question, he must be compelled to give way to the force and legal power of the argument of C. Jus. Shaw, in the case of *Bulgee vs. Roche*, in delivering the opinion of the Court, where he ably sustains the opinion adverse to Judge Story's. 11 *Pick.* 36. *Story's Con. L.* 489, *note to sec.* 582.

Again, the defendant claims under Felix Lewis, who obtained possession in Georgia, and before the Statute commenced running, removed to Mississippi. By the Act of 1806, " That when the defendant shall remove out of the jurisdictional limits of the State," the action may be brought " after the return of the defendant into the same" within the time before limited. *Prince*, 577.

The defendant seeks to benefit by the possession of Lewis, under whom he claims. He must, then, be subject to the disabilities attached to Lewis.

But Wynn cannot attach the possession of Lewis to his, so as to make out a defence.

Wynn did not purchase from Lewis. He purchased at Mar-

Wynn *vs.* Lee.

shal's sales, in Mississippi, and no privity exists between him (Wynn) and Lewis.

Again, we say that Lewis purchased from McMillan, with a knowledge that it was trust property. He then became a trustee with John W. Lee, and the Statute does not run in his favor against the rights and interest of the *cestui que trust.* .

4th. The Statute of Limitations of Georgia. The Statute of Georgia did not begin to run while Lewis remained in Georgia, and therefore, could not commence after he left Georgia, by reason of the provision of the Act of 1806.

It did not commence. The Act of 1767, sec. 9, provides for persons *beyond seas. Wat. Dig.* 141.

The expression, *beyond seas,* has, by numerous decisions, been extended to *persons living out of the State. Murray vs. Baker,* 3 *Wh.* 541. *Forbes vs. Foot,* 2 *McCord,* 331. *Shelby vs. Gray,* 11 *Wh.* 361.

John W. Lee, the trustee, resided in South Carolina, and had not been in the State while F. Lewis remained in it, nor had he been in Mississippi.

Defendant relies on the Act of 1817, taking away the disabilities of *persons beyond the seas.*

That can have no operation :

1st. Because, by its title, it is amendatory and explanatory of the Act of 1805, which was repealed before its passage.

And 2d. Because it intended only to explain it, so far as regards Idiots, Lunatics, and Infants, and not as regards *persons beyond seas,* and is to that extent unconstitutional.

M. J. WELLBORN, in conclusion, for the plaintiff in error, argued that the Court below committed error.

1. In charging the jury that the non-residence of the defendant in error within the jurisdictional limits Georgia, at the time of the conversion by Felix Lewis, of the slave sued for, prevented the Statute of Limitations of the State, from commencing to run against the action brought by him, against the plaintiff in error, in the Court below. The charge, in this respect, conflicts with the letter and spirit of the Act of December, 1806, and the recognition of that Act, as subsisting law, by this Court, in the case of *Harrison, et al. vs. Walker,* 1 *Kel. Rep.* 35. Certain exceptions to the running of the Act are stated in it, of which the non-

residence of the claimant is not one, and therefore, by an invariable rule of construction, it cannot be *implied.* *Paschal's adm'r vs. Davis,* 3 *Kel. Rep.* 265. *Angel on Limitations,* 204, 205, 206. *Expressio unis est exclusio alterius.*

2. The defence, so far as it was founded on the Statute of Limitations or prescription of the State of Mississippi, was a good one. The truth of this proposition is affirmed in principle, by this Court, in the case of *Paschal's adm'r vs. Davis,* cited above: and is adjudged to be law in those cases to which the Court in *Paschal's adm'r* and *Davis* approvingly refers, viz : *Sims vs. Canfield,* 2 *Ala. Rep. new series,* 561. *Brent vs. Chapman,* 5 *Cranch,* 358. *Goodman vs. Munks,* 8 *Port. R.* 94. *Doyle vs. Bouler,* 7 *Ala. R. N. S.* 246. The same doctrine is discussed and affirmed in substance, in the cases of *Newby's adm'r vs. Blakey,* 3 *Hen. & Munf.* 57 ; *Garth's executors vs. Barksdale,* 5 *Munf.* 101, and by the Supreme Court of the United States, in terms, in the case of *Shelby vs. Guy,* 11 *Wheaton,* 361. In all these cases, it should be observed that the Statutes of Limitations that were respectively passed upon, contained the usual provisions for the *barring of actions* merely, and touched not in terms the question of *right of property or title.* For copies of the Acts referred to in the cases cited, see *Angel on Lim.* 2 *edi. Appendix lxxxvi xci.* The right of Lewis, to have *defended* in the State of Mississippi, by authority of law, the possession of the property in question, at the time it was sold by the Deputy Marshal of Mississippi, to Wynn, is not disputed. Had the present action been instituted against *Wynn in the State of Mississippi,* I apprehend, as little doubt can exist of his right to have rested his defence there on the previous possession of Lewis, through whom he derived title. Again, had Lewis, or Wynn, after the period for the bringing of the action in hand, by the laws of Mississippi, was expired, *lost* possession of the slave, could not the right of possession, that all will agree would have been available a sa *defence,* have been turned to the support of a suit brought to *compel restitution !* This was the precise case of *Newby's adm'r vs. Blakey,* quoted from the 3 *Hen. & Munf.* as it was the case in effect of *Garth's executors vs. Barksdale,* 5 *Munf.* 101. And what more, it is respectfully inquired, is necessary to clothe one with *title* to an article of property, than the legal right to *defend* and *demand* possession of it, and when possessed of it, to *claim, use,* and *enjoy* it, as one's own,

without risk, or responsibility to another? Wynn, then, by the laws of Mississippi, acquired, by the purchase of the boy, a good title in Mississippi, and having done so, it is insisted that the title can be nothing the worse for having been transferred to this State. · Having, by negligence, lost his claim in Mississippi as against Lewis, how can the defendant in error ask to be allowed to recover it here, of one who with all the strength of Lewis' claim in hand, is additionally still farther removed from the act of original conversion of the property, in which the right to sue, if it ever existed, sprang up? What is this but to incur the absurdity and injustice so pointedly rebuked by the Supreme Court of the United States, in the case of *Shelby vs. Guy,* of "converting a title, good and valid in Mississippi, into a defeasible one in Georgia; sufficient title in the vendor into a defeasible title in the vendee." *Argumentum ab inconvenienti plurimum valet in lege,* is a maxim that bears with peculiar force upon the relation which the people of these States bear to this disputed question of right of property.

3. Yet more obviously did the Court err in overruling the ninth plea, taken by the plaintiff in error to the action below. That plea, as is seen, avers that by the laws of Mississippi, in the circumstances in which Wynn became the purchaser of the property in dispute, "the cause of action" itself of defendant in error was *extinguished.* It is deemed unimportant to adduce authority to show that the Circuit Court mistook the law of the case in the respect here complained of.

4. That in respect of the refusal of the Court below, on the trial of the case, to charge the jury that if, from the evidence, they believed the said Lewis held possession of the slave for the periods of four and six years, (by analogy to the Statutes of Limitations or prescription of the States of Georgia and Mississippi, respectively,) under a claim of title, that said Lewis acquired thereby, an absolute title, the Circuit Court, in refusing to give the charge requested, flatly contravened the language of this Court in the case of *Paschal's adm'r vs. Davis,* as also of the cases quoted from the 2 and 3 *Hen.* and *Munf.* and the 8 *Porter.* It is observable that the cases just cited distinguish *prescription* from statutory limitations of actions, *as such.* An "analogy" is adduced from Statutes of Limitations, which is applied to cases in which Statutes of Limitations, *eo nomine,* might be deemed, for reasons simply

technical, inoperative; as Courts of Chancery, which, though not bound by Statutes of Limitations, *ex proprio vigore,* yet adopt and enforce them in circumstances similar to those in which they are enforced in the Courts of Law.   For example, the issue decided in *Garth's executors vs. Barksdale,* arose between a creditor, relying upon adverse possession in the debtor, for a period of time analogous to that fixed by the Statutes of Limitations of the State, and one representing the prior legal title.   The Court regarded the possession, by analogy to the Statutes of Limitations, as equivalent to title in the debtor.   On the other hand, and yet in pursuance of the same principle, when Doyle, a judgment creditor, sought to subject to execution, certain slaves as the property of *Bouler,* by tracing title to it in him, the claimant was adjudged to have shown in turn, a transfer of the title from the defendant in execution to herself, through the medium of *adverse enjoyment* of it, by her.   And in the case last mentioned, the Court, with characteristic good sense added, " and the bar (growing out of the adverse possession,) will be recognized in any country into which the property may be taken."

It may be allowable, in passing from this point in the case, to ask attention to the fact, that the Mississippi Statute of Limitations, while it provides certain exceptions in respect of persons to be affected by it, *makes none in favor of non-resident plaintiffs.*

5. Is it not true, that when the defendant in error delivered the property sued for, to Mrs. McMillan, the *cestui que trust,* in execution of the deed of trust, on which he founds his right to maintain his action, that he parted from the right of possession, without which he is in no event entitled to a verdict?   The deed of trust conveys the property to the defendant in error, " for the following uses and purposes, that is to say, to permit and allow the said Mary Ann McMillan to have the free and uninterrupted possession, use, occupation, direction and enjoyment of it."   Can, then, the right of possession in him co-exist with the right of possession in her?   This action is not brought by Mrs. McMillan, nor has it been shown that it was brought by her request or consent, even.   Could she not have hired the boy to the plaintiff in error for a period of time not yet expired?   And if so, may she not have done it?   There is no proof to the contrary of it. Hence, we conclude that the Court mistook the law in its charge in this particular.

*By the Court.*—NISBET, J. delivering the opinion.

This was an action of trover for a slave brought by Lee, trustee, &c., against Wynn. A number of points are made in the record. In the consideration of each question, I shall take such facts as are necessary to the elucidation of each, and shall not state the facts at large in the outset. The defendant bought the slave at Mashal's sale, in the State of Mississippi. He was sold then, as the property of one Lewis. Lewis bought him in Georgia, from the *cestui que trust* of the plaintiff, and held possession in this State, for several months; after which he removed to Mississippi, taking the slave with him. Wynn, the defendant, having bought the slave in Mississippi, as stated, brought him back to Georgia, and here suit was brought against him for the property, by Lee, the trustee of Mrs. McMillan, who, with her husband, were the vendors to Lewis. To this suit Wynn pleaded the Statute of Limitations of Georgia. The plaintiff replied to the plea, that at the time of the conversion of the property by Lewis, (under whom Wynn claims,) and during all the time that he, Lewis, remained in the State of Georgia, he was a non-resident of the State, and within one of the exceptions in the Statute. And farther, that if the Statute did commence to run in Georgia, in favor of Lewis, that he removed without the State, into the State of Mississippi, before the bar was complete; and that it ceased to run, upon his removal. The Court sustained these replies to the defendant's plea, and he excepted. The latter of the two replies, made by the plaintiff to the defendant's plea, I shall consider first.

[1.] In the construction put upon the Statute of James, (of which ours is, in many particulars, a counterpart,) in England, and in the construction of Statutes of Limitations, very generally in the States of our Union, and in the construction which our limitative Act has received from our Courts, nothing is more firmly settled, as a general rule, than that, when a Statute has once commenced to run, it continues to run, over all impediments. There are some few exceptions, but generally, nothing whatever can resist its progress. The rule of limitation must be general; there can be no two, or more, or many rules. If it were so, the policy of the Statute would be defeated. If it were so, it could rarely be the means of quieting titles; it could rarely inspire confidence; it could not create repose. In England, the general rule is firm-

ly established. In *Duroun vs. Jones, Lord Kenyon* said, " I confess I never heard it doubted, till the discussion of this case, whether, when any of the Statutes of Limitations had begun to run, a subsequent disability would stop the running. If the disability would have such an operation on the construction of one of those Statutes, it would, also, on the others. I am very clearly of opinion, on the words of the Statute of Fines, on the uniform construction of all the Statutes of Limitations, down to the present moment, and on the generally received opinion of the profession, on the subject, that this question ought not now to be disturbed." 4 *T. R.* 310.

In *Cotterell vs. Dutton,* the whole Court lay it down as a general rule, " when once the Statute begins to run, nothing stops it." 4 *Taunt.* 828. See also *Hickman vs. Walker, Willes R.* 28. 1 *Strange,* 559. *Gray vs. Mender,* 1 *Wilson,* 134. ·*Smith vs. Hill,* 4 *T. R.* 406. 2 *Salk.* 420. 10 *Mod.* 206. 17 *Vesey R.* 934. In *Waldon vs. The heirs of Gratz,* the Supreme Court of the United States, through Chief Justice Marshall, say, " the counsel for the defendants in error, contend that after the Statute has begun to run, it stops, if the title passes to persons under any legal disability, and re-commences after such a legal disability shall be removed. This construction, in the opinion of the Court, is not justified by the words of the Statute. Its language does not vary essentially from the Statute of James, *the construction of which has been well settled*—and it is to be construed as that Statute, *and as all other Statutes of Limitations* founded on it, have been construed." 1 *Wheat.* 296.

The general rule is recognized in South Carolina. *Faysoure vs. Prather,* 2 *Nott & McCord,* 296. *Adamson vs. Smith,* 2 *Const. Decisions,* 273. *Richardson vs. Whitfield,* 2 *McCord,* 148.

In Massachusetts. 6 *Mass.* 328.

In Connecticut. *Bush vs. Bradley,* 4 *Day.* 307.

In New York. Chancellor Kent declares, " that the general rule is, that when the Statute of Limitations once begins to run, it continues to run on, notwithstanding *any* subsequent disability." *Peck vs. Randall,* 1 *J. Reps.* 175.

In Pennsylvania. *Hull vs. Vandergrift,* 3 *Binney,* 385.

In Virginia. *Fitzhugh vs. Anderson, et al.* 2 *H. D. M.* 306.

In North Carolina. *Andrews vs. Milford,* 1 *Hayw.* 322. *Ibid,* 416. *Cam. & Now. R.* 92.

No doubt, also, in all the States.

Such being the general rule, is removal out of the State after the Statute has begun to run, an exception? It is not by the terms of the Statute, for our Statute makes no such exception. And it is expressly ruled not to be, by the Supreme Court of New York, in *Peck vs. Randall,* 1 *Jonns. R.* 165, and by the Constitutional Court of South Carolina, in *Richardson vs. Whitfield,* 2 *McCord,* 148.

So we are satisfied, that if the Statute in this case had begun to run, it did not stop, because the person in possession of the slave, (Lewis,) subsequently removed without the State.

[2.] It is, however, farther said, that at the time of the conversion, and all the time that Lewis was in this State, the plaintiff was a non-resident, and that by an exception in our own Statute, it does not run against a non-resident plaintiff. The fact of non-residence was proved on the trial. We find no such exception in the Statutes now of force in Georgia.

By the Act of 1767, in which is found the limitation upon actions of *trover,* of and in which is found the larger amount of our Law of Limitations, an exception is made, as to suits for the recovery of lands, in favor of plaintiffs beyond seas. This exception is found in the first section of that Act. In the 9th section of that Act there is also an exception in favor of non-resident plaintiffs, in actions of *trover.* This is the section of the Act of 1767, upon which the defendant in error relies. We think that it is repealed. The whole Act 1767 was repealed by the Act of December, 1805, revived by the Act of June, 1806, as to all actions and causes of action, which originated under it; and in December, 1806, an Act was passed, entitled "an Act to revive and continue in force, *an Act for the limitation of actions, and avoiding suits in law, passed the 26th day of March,* 1767, and to amend the 5th and 6th sections of said Act." By the 10th section of the last named Act, the Statute of 1767 is declared to be fully in force, from the first day of February, 1793. It is argued that this Statute, which in the terms of the first section, revives the whole Act of '67, as a matter of course, revives the 9th section of that Act, which contains the exception in favor of the defendant in error. And so it would, if there was nothing else in the Act of December, 1806, but that section. But let us see farther. The second section of this Act of 1806, re-enacts *in totidem verbis,* the 9th section of the

Act of '67, except so much of it, as contains the saving in favor of non-resident plaintiffs, and in lieu of that, and precisely in the relative place in which that stood, in the 9th section of the Act of '67, it substitutes a saving for plaintiff, where the defendant shall remove out of the jurisdictional limits of the State. Now, the Act of December, 1806, by its title, is not an act alone to revive and continue in force the Act of 1767, but it is also an Act to amend the 5th sections of the Act of 1767. The Legislature, then, judging of its object by the title, meant to revive that Act, except the 5th and 9th sections, and those sections, it intended to amend. Accordingly, it proceeded to revive it, and did, at the same time amend the 9th section, by re-enacting it, except the saving in favor of non-resident plaintiffs, which it omitted, and substituted in lieu of that saving, one founded upon the non-residence of the defendant. This statement is of itself conclusive, and would seem to need no illustration. Here is an amendment, to use a parliamentary phrase, by striking out and inserting. Can it be believed, that the Legislature meant that both the 9th section of the Act of '67, and the second section of the amendatory Act, should stand? If it did not mean to repeal the 9th section of the Act of '67, why re-enact it literally? And if it did intend not to repeal, more particularly that clause which relates to the saving, for the non-resident plaintiff, why when it in the new Act enumerates all other savings found in the 9th section, does it omit that one? The last Act contains the latest declared will of the Legislature. As to all its positive enactments, it is the law of the land. All the provisions of the 9th section, identical with those of the latest Act, are of course repealed. This being so, how would the saving in behalf of non-resident plaintiffs in the 9th section stand? Quite alone, in its statutory and unintelligible solitude. Stript of its explanatory adjuncts, its context and its original connections, it would be ridiculous in its attitude, and without practicable application. The General Assembly meant to repeal the saving, founded on the non-residence of the plaintiff, and to provide in his behalf one, growing out of the removal of the defendant. I see no good reason, myself, why the non-residence of the plaintiff should protect him from the operation of the Statute. The Courts of the State are open to him. He can always prosecute his remedy. But it is reasonable that he should be protected when the defendant has removed. In that event, the fact

might be, that he does not ascertain the locality of the defendant until the Statute has barred his suit, or if ascertained, it might be possibly, when he could not sue. There is a difference in the equity of the two savings. It might be said that the plaintiff is within the equity of the Statute. Not so, because his non-residence is not founded upon equal equity with that of the defendants. Besides, the Court has no power to enlarge the provisions of the Statute of Limitations. Certainly not to add an exception. Beyond all doubt, not to add an exception, when it is manifest that the Legislature intended to exclude the very exception sought to be added. This thing was attempted to be forced upon the Courts of England, and was repudiated. This very point occurred in *Brechford et al. vs. Wade.* The question grew out of the Limitation Law of Jamaica. It contained no exception in favor of absenting, and it was insisted that on a principle of inherent equity, it ought to be constructively introduced into it. The *Master of the Rolls* said, " I have not been able to find any authority for this doctrine; but are we, therefore, to introduce into a Statute conceived in general terms, all the exceptions which, upon the principles of the Common Law, we may think it reasonable that the Statute should have contained, and in particular, can we do so in cases like the present, when the Statute does notice some of the Common Law disabilities, does adopt some of the Common Law exceptions, but omits others. Is this choice and election made by the Legislature, to be controlled, and in effect annulled by a supposed inherent equity, which is to prevent them from so-legislating, as in reality, it would come to a question of competency ? If the Legislature have deliberately made this distinction, how can we refuse to give effect to it, without denying that it was competent for the Legislature, so to distinguish the case of absentees from that of infants, *feme coverts* and persons of *non sane* memory ? I have no doubt the omission was intentional." 17 *Vesey,* 90. *Angel on Limitations,* 204, 205.

The intention of the Legislature to disallow this exception is manifest in this, that in 1817, they passed a declaratory law, expressly excluding it. The constitutionality of that law was denied in the argument, but as we are satisfied that the 9th sect. of of the Act of '67 is repealed, we rest our opinion there, without deciding the constitutionality of the Act of 1817. It is our opinion that the Court erred in deciding that the plaintiff below was

protected from the operation of the Statute of Limitation of Georgia, by reason of his residing out of the State.

As before 'stated, Lewis carried the slave in controversy, with him' to the State of Mississippi, and retained possession until the statutory bar of that State had fully attached, when' Wynn, the defendant, bought him at public sale, under a judgment against Lewis. He plead in bar of this suit, his title to the negro through Lewis, and Lewis' statutory title acquired under the Statute of Limitations of Mississippi. The Limitation Act of that State was formally pleaded and set forth. To this plea the plaintiff demurred, upon the ground that Acts of Limitation are in bar of remedies, and that as to remedies in personal actions, the *lex fori* governs. The Limitation Acts of Mississippi, therefore, and rights acquired under them, could not be a defence to a suit brought in Georgia. The presiding Judge sustained the demurrer, and the defendant excepted.

There is no doubt of the correctness of the two general propositions insisted upon by the plaintiff below, to wit, that unless Limitation Acts, in their provisions, bar rights, they relate only to remedies, and that in actions for the recovery of personal property, the law of the forum obtains as to the remedy. However the soundness of these positions, or rather of the latter position, may have been questioned by writers on the European continent, particularly by civil ones ; yet it is a firmly established and universally conceded rule of the Common Law, not, however, as we shall see, wholly without exception. The rule that suits must be brought within the time prescribed by the law of the State wherein the Court sits in which they are instituted, is based upon principles of international justice and policy. Every nation must have the right to prescribe the time and manner in which, and the circumstances under which suits shall be litigated in its own Courts. Foreigners ought to be subjected to the same laws which govern citizens ; property ought not to be subject to the various laws of surrounding States. The Limitation Law which protects a citizen against his fellow citizen, ought also to protect him against a foreigner, and the law which bars from our halls of justice a citizen, ought equally to exclude a foreigner. So also, the time which the law gives to a citizen, within which to prosecute his rights, ought in justice and in comity, to be given to a foreigner. For the general rule, see 4

*Cow.* 528, *note. Ibid*, 530.   1 *Gallis*, 371.   2 *Mason*, 321.   10 *Barn. & Cress.* 903.   1 *Barn. & Adol.* 284.   2 *Bing. N. C.* 20, 209. 212.   5 *Clark & Finell*, 1 *B.* 14, 15, 16, *and* 17.   3 *Conn.* 472.   3 *Ibid*, 523.   8 *Peters*, 361.   11 *Pick.* 36.   3 *John. Ch. R.* 190.   6 *Wend.* 475.   *Story's Conf. of Laws. sect.* 577.

[3.] We have determined that title by possession of personal property, acquired under our own Statutes of Limitation, is not only a good defence, against an adverse claimant, but invests the possessor with the absolute property. *Paschal, Admr. vs. Davis,* 3 *Kelly*, 265.   *Sims vs. Canfield,* 2 *Alab. R.* 561.   *Brent vs. Chapman,* 5 *Cranch*, 358.   *Goodman vs. Munks,* 8 *Porter R.* 94. *Doyle vs. Bowler,* 7 *Ala. R. n. s.* 246.   2 *Bay*, 156.   3 *H. & Munf.* 57.   According to this decision, Lewis, in the State of Mississippi, had such a title to this slave as would have enabled him, if disposessed there, to sue for and recover him; that title passed to Wynn, and in that State the Act of Limitations would not only have protected him, but upon his title derived from Lewis, he could then have maintained his action. Coming into this State, and bringing here the slave and his title, he encounters a suit.

[4.] Can he defend himself upon that title? We have seen that according to the general rule, he cannot. But according to an exception to that general rule, stated by Mr. STORY in his Conflict of Laws, and upon the authority of cases determined in accordance with the principles of that exception, we think he can. The learned writer thus states the distinction. "Suppose the Statutes of limitation or prescription of a particular country, do not only extinguish the right of action, but the claim or title itself, *ipso facto*, and declare it a nullity, after the lapse of the prescribed period, and the parties are resident within the jurisdiction during the whole of that period, so that it has actually and fully operated; under such circumstances the question might properly arise, whether such Statutes of limitation or prescription, may not afterwards be set up in any other country to which the parties may remove, by way of extinguishment, or transfer of the claim or title." In *Story's Conflict of Laws, sec.* 582, Mr. STORY illustrates his position, by supposing the case of property adversely held in one State, until the statutory title is perfect and the owner removes into another State with his property, where there is a longer time of prescription, or none at all. In such a case, he intimates very plainly, that the title could not be impugned in the State to which the possessor may remove. The case

Wynn *vs.* Lee.

supposed, is, in all the principle, involved the case before this Court. Judge STORY says, that it has been determined, that such a title under such circumstances, cannot be impugned. The case of a debt, possibly, might stand upon somewhat different ground. The decisions have been upon personal property. The Supreme Court so decided. In *Shelly vs. Gray*, that Court determined, that five years possession of a slave, constitutes a title in Virginia, which might be set up as a defence by the defendant in the Courts of Tennessee. 11 *Wheat. Rep.* 361, 371. Here then, is the authority of the highest tribunal known to our laws, upon the point I am now considering. The Supreme Court of the United States have adjudged, that a title to a slave acquired under the limitation laws of Mississippi, may be set up in defence in this State, to an action brought for his recovery. I do not perceive that the principle has been tested in any of the States, except in Massachusetts, where it was seriously and ably controverted by Chief Justice SHAW. In *Bulger vs. Roche*, the decision in Massachusetts was against it. It is worthy of remark, that the Supreme Court, in *Shelly vs. Gray*, do not insist upon the qualifications which Judge STORY annexes to the principle. That is authority, therefore, for the rule, without qualification. All that appears to be necessary by the judgment of the Supreme Court, is, that the title shall have accrued according to the laws of the State from which the owner of the property removes. We are not, however, prepared to adopt the rule, without the qualifications. Let us now see what they are. They are two. First, the limitation Act of the foreign State, must not only bar the right of action, but it must also bar the *title* or *claim*. Second, the situation of the parties must be such, that the Statute has *fully* and *actually* operated on the case. The latter qualification is not stated as Judge STORY states it. He states it thus: " The parties must be resident within the jurisdiction, the whole of the prescribed period, so that the Statute has actually and fully operated upon the case." The qualification which he designs to express, is clearly this, to wit: *the Statute must have actually and fully operated upon the case.* The *residence* of both parties is required by him, because generally, the Statute cannot *actually* and *fully* operate upon the case, without such residence. And that for the reason, that Statutes of limitation very generally contain a saving in favor of non-resident plaintiffs, or in their favor by reason of the

non-residence of defendants.    These exceptions, one or both, are
found in almost all the limitation Acts of the world.    As in Eng-
land, Massachusetts, Virginia, Georgia.    Hence, speaking of this
subject, in reference to these Acts at large, there is a perfect pro-
priety, in the formulary of words adopted by him.    Parties must
reside within the jurisdiction the whole period.    Why?    *So that
the Statute may actually and fully operate in the case.*    In a State
where there is an exception to the operation of the Statute, grow-
ing out of the non-residence of either plaintiff or defendant, the
Statute could not actually and fully operate upon the case, ex-
cept in cases where both parties reside within the jurisdiction.    I
think it is perfectly manifest, that the qualification intended is,
that the Statute must actually and fully operate in the case, and
hence the propriety of stating it as I have done.    If by law, the
situation of the parties is such, that the Statute has as fully opera-
ted upon the case, although one of them has not resided in the ju-
risdiction the whole period, as it could were they both resident
all the time within the jurisdiction; then, the qualification is ful-
filled.    And that is the case where the defendant has resided the
whole term within the jurisdiction, and there is no exception in
the Act in favor of non-resident plaintiffs.[*]

In this case, it will not be questioned but that the Statute did

---

[*]Note.—*Copy of the provisions of the Mississippi Statute of Limitations, ap-
plicable to actions of trover.*

June 7, 1822.

" *Sec.* 91. All actions of trespass *quare clausum fregit,* all actions of trespass,
*detinue, trover and replevin,* for taking away goods and chattels, all actions of
debt founded upon any lending or contract without specialty, or for arrearages
of rent due on a parol denied, and all actions of account, and upon the case, ex-
cept actions for slander, and except, also, such actions as concern the trade or
merchandise, between merchant and merchant, their factors, agents, and ser-
vants, shall be commenced and sued within six years next after the cause of
such actions shall have accrued, and not after." (See 106, 108, 109, 110, 111.)

*Provisions as to minors, feme coverts, and insane persons.*

" *Sec.* 94. If any person or persons, who is, or are, or shall be entitled to any
of the actions specified in the three preceding sections of this Act, is, are, or
shall be, at the time of any such cause of action accruing, within the age of twen-
ty one years, *feme covert* or insane, then such person or persons shall be at lib-
erty to bring such action, so as he, she, or they institute or take the same within
such time as is before limited, after his, her, or their coming to or being of full
age, discovert, or of sane memory, as by other persons having no such impedi-
ment, might be done.

operate as fully and actually upon the case, as if Lee, the plaintiff, had resided, as well as Lewis, the whole of the term in that State. Lewis's title was as perfect, the property in the slave was as immovably fixed in him by the limitation laws of Mississippi, as it could have been had Lee resided there all the time. The reason is, that notwithstanding his non-residence, by the provisions of those laws the Statute bar attached. So also in this case, the other qualification is fulfilled ; for it was admitted on the argument, that the Statute of limitations of Mississippi, barred not merely the *right of action*, but also the *title* or *claim.* The case, then, is fully within the distinction taken by Mr. Story, and much stronger than the case determined by the Supreme Court of the United States. In case of contracts, it is conceded that the law of prescription of a particular country, does not form any part of the contract ; it merely operates upon it *ex post facto*, by affecting the remedy. Yet it might admit of a doubt, whether this is true, when the law of prescription absolutely annuls the contract as well as bars the remedy, after a limited time. It may be a question, whether in that case the prescriptive law does not enter into the contract. If it does, then it will be respected by foreign jurisdictions ; for as to the construction and effect of contracts, the *lex loci contractus* governs. This view of the matter is presented by Chief Justice Tindal, in commenting in a late cause, upon the distinction taken by Mr. Story. He says, " With such restriction, it does indeed appear but reasonable, that the part of the *lex loci contractus* which declares the contract to be absolutely void at a certain limited time without any intervening suit, should be equally respected by the foreign country, as the part of the *lex loci contractus*, which gives life to, and regulates the construction of the contract ; both parts go equally *ad valorem contractus*, both *ad decisionem litis.*" *Huber vs. Steiner*, 2 *Bing. New R.* 202. In that case, the proposition of Judge Story, with the qualifications which he makes, met with the approval of the English Court of Common Pleas ; an indorsement, which constitutes of itself, very satisfactory authority. So also it was approved by Lord Brougham, in *Don vs. Lipman*, in the House of Lords. He calls it *excellent*, and seems not to have enforced it, because the case before him did not come within the prescribed qualifications. I cannot permit myself to doubt, but that both of these distinguished Jurists would, in cases falling within it, give effect to the

doctrine of our own not less renowned STORY. Satisfied as we are of its soundness, and this case being, as we conceive, fully within its requirements, we give it our sanction, and determine it accordingly.

[5.] The demurrer to the pleas of the Mississippi Statute of limitation having been sustained, the defendant proposed to read in evidence under the general issue, a certified copy of the record of that Statute, which was refused by the Court, and upon that refusal the defendant excepted. Holding the opinion he did as to the admissibility of this defence, the circuit Judge was right in repelling this evidence. Holding the opinions we do as to this defence, as a question of pleading and evidence, we think the record was admissible under the general issue. *Conversion* is the gist of the action of trover. The general issue puts in issue that fact, and evidence which negatives the conversion, is admissible under that plea. If the defendant had a title to the property, good against the plaintiff, he made no conversion ; and as the record went to show title in him, and those under whom he claimed, it was competent. It was better, however, to plead it ; more in accordance with the spirit of our Statute.

[6.] The defendant in the Court below insisted, that Mrs. Mc-Millan, the *cestui que trust,* having possession of this slave from her trustee, Lee, the deed of trust was executed ; and that he, as trustee, could not maintain trover for him. The circuit Judge disaffirmed this doctrine, and so do we.

The legal estate was in the trustee ; of that, he had never been divested. The trust was not alone for Mrs. McMillan, it was also for her children. It was not a trust consummated when the slave was delivered into her possession. She would not by a sale, defeat the limitation over to her children. The trustee held the legal title for the purposes of the trust, and was entitled to the possession as against strangers to the deed; at law, as against Mrs. McMillan herself. We think the Court was right in sustaining the action. *Lerrin on Trusts,* 247, 481. *Willis on Trustees,* 72, 73, 77, 84, 109, 482. See also *Blake vs. Irvin,* 3 *Kelly,* 345. *Hill on Trustees,* 274. *Goodtitle vs. Jones,* 7 *T. R.* 47. 4 *B. & Ald.* 745. *Jones vs. Jones,* 3 *Bro. C. C.* 80.

[7.] It was further urged by the defendant in the Court below, that when a plea is demurred to, the demurrer roves through the

whole record; and that it is the duty of the Court, to look through the record and give judgment against the party *first in default.* He farther insisted, that this writ was insufficient; it is a mere fiction, and does not, as required by our Statute, plainly and distinctly set forth the plaintiff's cause of action ; and the plaintiff having demurred to the pleas, and the plaintiff being first in default, judgment should be rendered against him on his declaration. The rule, as stated, was not recognized by the circuit Judge, as applicable to our Courts.     Nor do we recognise it as applicable to our Courts.     Our Statute, sends the case to the jury upon the declaration and answer, and thus overrules the old English practice, as claimed by the counsel for the plaintiff in error.     So thinking, we give no opinion as to the sufficiency of the declaration in trover.

[8.] By rule of Court, the plaintiff, unless the defendant introduces no testimony, is entitled to open and to conclude the argument of the cause before the jury.     In this case, the plaintiff's counsel declined to open his cause.     The defendant moved the Court, that he be required to open his cause, which the Court declined to do ; and he excepted.     Our Courts are organized to administer justice according to law.     It is the right of a party to appear by counsel and in his own proper person, not only in the conduct of his cause, but in the discussion of its merits before the jury.     Lightly as some may esteem it, this is one of the most valuable of the rights of the citizen.     It is necessary to a fair and impartial trial according to law ; a right long denied to our British ancestry.     Appearance by counsel, is an aid to the Court in the ascertainment and application of the law, however profound the learning or admirable the wisdom of the Bench.     It is one of the most salutary checks upon a weak or corrupt Court.     British liberty is as much indebted to the eloquence and learning of Erskine, before the Courts and juries of that country, as to the labors of any one of its wisest statesmen in the halls of legislation.     The object is not to secure, by management, or trick, or dexterity, against the law and against the evidence.     Such is not the legitimate object of appearance by counsel.     Such is not the vocation of our noble profession, always distinguished, as it has been, for its liberal views, its enlightened patriotism, and its consecration of virtue, justice, and order.     Its object is to aid in the ascertainment of truth—in the strict, and, therefore, equitable administration of the laws of the land.     Important as this privilege

is, it becomes necessary, so to order its exercise as to maintain it equal, or as nearly so as practicable, between the parties.   To maintain this equity, in the privilege of argument before the jury, our rules of Court give the opening and the concluding address to the plaintiff in the action, except in cases where the defendant introduces no evidence; then he is entitled to the conclusion.   The opening is not merely a privilege to the plaintiff, it is also a privilege to the defendant, that the plaintiff open to him the grounds of law, arising upon the facts and pleadings in the case.   If, as in this case, the plaintiff is permitted to waive his right of opening, the opposite party is in the dark, to some extent at least, as to the grounds upon which he will rely.   Each party ought to be heard upon those grounds upon which each relies for a recovery.   This is certainly equitable.   And this is not the case if the party in conclusion is not required to develop the grounds of his reliance.   The Court, too, has an interest in the matter. He ought to desire discussion upon the points upon which he is called to decide, if not always, yet very generally.   If they are not made until the conclusion, he hears but one side, unless, indeed, he chooses to disturb the regularity of the proceeding, by allowing the other side a reply.   We think, therefore, and such is our judgment, *that the party who is entitled to the concluding argument in all cases under our rules of Court, should be required to state to his adversary, before he addresses the jury, the grounds in the pleadings upon which he will rely, and the points of law that he will make in the case, and also be required either to read, or present to him the authorities which he expects to use, and farther, that the party in conclusion shall be confined in his argument, to the grounds, points, and authorities thus exhibited.*

It is not, however, to be understood that the counsel who is in conclusion, and who is also entitled to open the cause, shall not be at liberty, if he chooses to do so, to argue the case at large in his opening speech.