LANGSTON, administrator, *vs.* ADERHOLD.

[JACKSON, Judge, was providentially prevented from presiding in this case.]

1. Generally, limitation laws act only upon remedies, and do not extinguish rights. A surety, therefore, is not absolutely discharged

because a suit against him would, if brought, be barred in the courts of this state by section 2917 of the Code. Were he to subject himself to action in a foreign jurisdiction, and be there sued, the limitation laws of the Code would not avail him, though they had fully run in his favor during his previous residence here.

2. When principal and surety are both residents of Georgia at the execution of the contract, and the principal afterwards removes to another state, the statute of limitations is suspended as to him until his return. (Code, §2929). If, before the remedy was barred as to the principal, but after it was barred as to the surety, the latter made a new promise in writing, at the instance of the creditor, the new promise is binding, though he made it in ignorance of the true limitation law, believing the remedy not barred as to himself, and though the creditor, in like ignorance and under the same belief, told him it was not barred, and thus influenced his action; there being no fraud or abuse of confidence.

Statute of limitations. Principal and security. Contracts. Before Judge RICE. Franklin Superior Court. October Term, 1877.

On March 16, 1876, Langston, as administrator of Bagwell, brought complaint against Aderhold, upon the following note:

" CARNESVILLE, October 18, 1865.

" Twelve months after date I promise to pay J. F. Langston, administrator of J. J. M. Bagwell, or bearer, thirteen hundred and twenty-three dollars and forty cents, value received.

(Signed)     CHARLES S. GOODWIN,<br>
           H. D. ADERHOLD."

Indorsement on back;

" To avoid a suit upon this note for the present, and to prevent any statutory bar, I hereby renew my obligation as security on the same. This September 19, 1873.

. (Signed)     H. D. ADERHOLD."

The defendant pleaded the general issue, the statute of limitations, and that he was only security on the note and the new promise was made in ignorance of his rights and

in ignorance of the law, as suit on the note was barred at the time the new promise was made, of which fact he was not aware; that he was induced to make the new promise by the representation of plaintiff that the note was not barred.

The evidence presented the following facts:

The note was given by Goodwin for property purchased at the sale of Bagwell's estate. Aderhold signed as security merely. In 1866, Goodwin resided in Atlanta, and his wife in Franklin county. In the summer of 1868, he left Georgia and went to Memphis, Tennessee. He was followed by his wife about the first of 1870. Mrs. Goodwin was the daughter of Bagwell, the intestate.

Shortly before the new promise the plaintiff told the defendant, that unless such promise was made he would be compelled to institute suit on the note; that it was not then barred. Both plaintiff and defendant then honestly entertained this belief.

The court charged the jury, in substance, that if the note was barred at the time of the new promise, and the defendant did not know this fact, but was induced to make the new promise by the representation of plaintiff that the note was not barred, then the defendant was not bound by such promise, although the plaintiff may have been honestly mistaken in his statement as to the effect of the statute of limitations on the note.

The jury found for the defendant. The plaintiff moved for a new trial because of error in the charge. The motion was overruled and the plaintiff excepted.

J. F. LANGSTON, for plaintiff in error.

S. P. THURMOND; W. R. LITTLE; J. S. DORTCH, for defendant.

BLECKLEY, Judge.

1. The Code declares, in section 2158, that, "if by any

act of the creditor the surety is discharged, and in ignorance of the fact of such discharge, the surety promises to pay, such promise shall not be binding." This applies where there is *discharge;* as if an indorser being discharged for want of notice of non-payment, promises to pay, making the promise in ignorance of his legal rights, he will not be bound. 2 *Kelly,* 30, 31. But the statute of limitations (Code, §2917) does not work discharge. The statute goes to the remedy, and does not act directly upon the right. The right remains intact. In conscience, the contract is as binding after the remedy is barred, as it was before the bar attached. Discharge is effective all over the world; but the operation of limitation acts proper, is restricted to the particular state or country for whose courts they are enacted. Though the limitation period had fully run out under cir-. cumstances that rendered it practicable to sue on the contract, that condition of things would afford no defense in another jurisdiction. The latter would administer its own limitation laws, paying no attention to those of another state or country. 11 Pick., 36; 9 How., 407; 2 Parsons on N. & B., 631; Ang. on Lim., §§66, 67; 5 *Ga.,* 231 *et seq;* 7 *Ib.,* 163; 5 Reporter, 398. In 47 *Ga.,* 273, it was held that no discharge to the surety resulted from delay to sue the principal, even though an action as to the latter was barred. This is a clear recognition of the difference between bar and discharge; for if the principal debtor had been discharged, the inevitable consequence would have been the discharge of the surety likewise. Code, §2149.

2. In the present case, the principal had removed from the state, so that the bar, as to him, was prevented by section 2929 of the Code. The surety and the creditor both believed that the bar had not attached in favor of the surety, and this opinion was not known to be ill-founded until the decision reported in 49 *Ga.,* 431, made its appearance. Prior to that decision, there was a belief, perhaps a very general one on the part of the profession and the people, that the suspension of the statute, declared by the constitution of

1868, was operative on notes, etc., made after June, 1865, notwithstanding the eighth section of the act of 1869, which expressly subjected them to the limitation laws set forth in the Code.   The new promise now relied upon was made before any decision to the contrary of this view had appeared. The promise was made in ignorance of the true limitation law ; but it seems to us, *that* could not, and did not, vitiate it.   The general rule is laid down in section 3121 of the Code in these terms :  " Mere ignorance of the law on the part of the party himself, where the facts are all known, and there is no misplaced confidence, and no artifice or deception, or fraudulent practice is used by the other party, either to induce the mistake of law, or to prevent its correction, will not authorize the intervention of equity."   See, also, 56 *Ga.*, 73.   Here the facts were all known, and both parties acted honestly and in good faith.   There was no misplaced confidence; for although the creditor was an attorney at law, and the surety was not, they did not sustain towards each other the relation of counsel and client.   They dealt at arms length ; and if the surety was willing to act upon the opinion of the creditor instead of taking other counsel, he cannot urge that he was misled, where there was no intention to mislead.   If he wished to secure himself against the consequences of possible error, he ought to have sought counsel elsewhere.   A full measure of diligence would have required some such step.   But the great fact is, that the promise was founded on a solid moral right.   The debt still existed, and it was doing what ought to have been done to give a remedy for its recovery.   If there was a mistake, it was one which went to advance justice, and not to obstruct or defeat it.   A mistake which operates as injustice to one party, and gives an unconscientious advantage to the other, is the kind of mistake of law from which equity relieves.   Code, §3122.   But what hurt is it to an upright conscience to receive voluntary payment (even from a surety) of a just debt after the remedy is barred ?   The truth is, a debt is equally just, whether there is a remedy for its recovery or

not. Remedy does not make justice, but has relation to enforcing justice. There is a kind of injustice in waiting for legal remedies to be invoked, and in obliging creditors to incur the expense and delay of prosecuting them. Whoever wishes to practice the highest order of justice, will pay without being sued. Right, not remedy, is the foundation of duty. Remedy is the whip that urges performance on the unwilling.

Cited in the argument: Code, §2158; 2 *Kelly*, 30, 31; 1 Tenn. R., 712; 7 Mass., 449; 9 *Ib.*, 408; 2 Bailey, 623; 1 *Kelly*, 418; 49 *Ga.*, 432; 10 *Ib.*, 235; 17 *Ib.*, 522; Code, §§2150, 2157.

Judgment reversed.